IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TODD P.,**

    **Plaintiff,**

v.             Civil Action 2:23-cv-2785
               Magistrate Judge Kimberly A. Jolson

**COMMISSIONER OF**
**SOCIAL SECURITY,**

    **Defendant.**

## OPINION AND ORDER

Plaintiff, Todd P., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Court **GRANTS** Plaintiff's Statement of Errors (Doc. 9), **REVERSES** the Commissioner of Social Security's non-disability finding, and **REMANDS** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**I.  BACKGROUND**

Plaintiff initially filed applications for DIB and SSI on September 16, 2009. (R. at 102). Following an administrative hearing before ALJ Phillip C. Lyman ("ALJ Lyman"), the Social Security Administration granted his first set of applications in June 2011 due to his status post-back surgery, degenerative disc disease of the lumbar spine with radiculopathy, and obesity. (R. at 94–102). Plaintiff continued to receive DIB and SSI until August 2018, when his benefits were terminated due to his incarceration. (R. at 67).

Plaintiff protectively filed his current applications for DIB and SSI on November 4, 2020[1], alleging disability beginning February 15, 2009, due to a post lactomy lumbar (post laminectomy syndrome of his lumbar spine) and arthritis in his back. (R. at 208–210, 239). After his applications were denied initially and on reconsideration, Administrative Law Judge Kevin R. Barnes ("ALJ Barnes") held a telephone hearing on March 15, 2022. (R. at 40–62). ALJ Barnes denied benefits in a written decision on May 5, 2022. (R. at 20–39). The Appeals Council denied Plaintiff's request for review, making ALJ Barnes's decision the Commissioner's final decision. (R. at 9–14). Plaintiff filed the instant case seeking a review of that decision on August 26, 2023, (Doc. 1), and the Commissioner filed the administrative record on October 19, 2023. (Doc. 8). The matter is briefed and ripe for review. (Docs. 9, 10).

### A. Plaintiff's Statements and Testimony

ALJ Barnes summarized Plaintiff's statements to the agency and his testimony from the administrative hearing as follows:

> [Plaintiff] alleges disability due to back issues, left hand problems and ADHD. On a Function Report, he noted he uses a cane, and he has difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs and using his hands. He also noted difficulty concentrating due to pain, but he is able to complete tasks, follow instructions and get along with others. He testified he underwent surgery on his back in 2015 but his pain returned after two to three months, and he has problems standing for more than 10 minutes at one time. He also testified he is not able to sit more than 20 minutes or walk more than 30 minutes, but he is able to drive, shop for groceries and perform household chores with breaks. He stated he uses a cane to ambulate four to five days a week, but he has diminished grip strength in his left hand, which makes it hard to hold objects. He also stated he is not able to focus on more than one thing at a time and pain affects his ability to concentrate but he no longer uses illegal substances (Exhibits B2E, B3E).

(R. at 29).

---

[1] The parties and ALJ Barnes stated that Plaintiff filed his current applications in 2020. (*See* Doc. 9 at 2; Doc. 10 at 2; R. at 24). But the applications in the record are dated April 5, 2021. (*See* R. at 208–09, 215). This Court refers to the date briefed by the Commissioner and used by ALJ Barnes in his decision.

**B. Relevant Medical Evidence**

ALJ Barnes summarized the medical records as to Plaintiff's impairments as follows:

[In] November 2015, [Plaintiff] presented with complaints of low back pain that radiated to his right leg. An examination was positive for tenderness and diminished range of motion in his lumbar spine but there was no evidence of decreased strength or gait impairment. It was noted he was scheduled for L5-S1 decompression and fusion in January 2016 (Exhibit B1F/10, B1F/14). In May 2016, he presented to a routine evaluation with complaints of low back pain. An examination was positive for tenderness and diminished range of motion in his lumbar spine but there was no evidence of decreased strength or gait impairment. He was started on Percocet (Exhibit B1F/19). An x-ray of the lumbar spine showed evidence of a lumbar fusion but there were no acute abnormalities (Exhibit B6F/19).

There was no evidence of additional treatment for his severe physical impairments until April, May and July 2019, when he presented with complaints of low back pain. Examinations were positive for obesity, but he was in no acute distress and his gait was normal. His muscle/grip strength was normal and there was no evidence of diminished range of motion. He was advised to exercise daily, and non-pharmacological pain relief measures were discussed (Exhibit B3F/152, B3F/284, B3F/315). In April 2021, he presented to establish care and he complained of low back pain. He also complained of left thumb pain that started two weeks prior. An examination was positive for tenderness and swelling in his left hand, but his range of motion and grip strength were intact. He also had good range of motion in his lumbar spine and there was no evidence of a gait impairment. He was started on Medrol, and he was referred to pain management (Exhibit B1F/34).

In May 2021, [Plaintiff] presented to a pain management evaluation with complaints of low back pain. An examination was positive for lumbar tenderness and his gait was antalgic but straight leg raises were negative and he had good strength in his lower extremities. He was continued on Medrol (Exhibit B6F/12). In August 2021, he presented to a pain management evaluation with complaints of low back pain that radiated to his legs. An examination was positive for lumbar tenderness and his range of motion was diminished but there was no evidence of a gait impairment and he had good strength. He was continued on Medrol (Exhibit B6F/23). In January and February 2022, he presented to a chiropractor with complaints of low back pain. Examinations were positive for lumbar tenderness and spasms, but he reported feeling better after treatment (Exhibit B9F/7-15).

With regard to [Plaintiff]'s mental impairments, in November 2017, he presented with complaints of racing thoughts and trouble expressing his thoughts coherently. An examination showed no deficits in his mood, memory, attention span or ability to concentrate. It was noted he was hyperactive, and he was being treated at a separate facility for opioid addiction (Exhibit B1F/26). In February 2018, he presented with complaints of hyperactivity and irritable moods.

3

> He also reported problems accomplishing tasks due to difficulty focusing. An examination showed his mood was anxious and his speech was rapid, but he was attentive, and his thought content, memory and cognition were normal. He was started on Guanfacine (Exhibit B1F/29).
>
> In April 2019, [Plaintiff] underwent a mental health screening during a period of incarceration. An examination showed his mood was euthymic and he was alert/fully oriented. His estimated intelligence was average, and his concentration was good. It was noted he denied any mental health issues and he appeared to be stable (Exhibit B3F/300). There was no evidence of additional treatment for his ADHD or stimulant disorder.

(R. at 29–31).

### C. Discussion of Prior Decision

ALJ Barnes discussed Plaintiff's previous decision as follows:

> The claimant previously filed Title II and Title XVI applications on September 16, 2009, and an Administrative Law Judge issued a hearing decision on June 23, 3011, finding the claimant was disabled from February 15, 2009, through the date of the decision (Exhibit B9A). The claimant did not request a review of the prior hearing decision, which then became final and binding pursuant to the doctrine of res judicata (20 CFR 404.957(c)(1) and 416.1457(c)(1)). I find the claimant's current applications involve deciding whether the claimant is disabled during a period that was not adjudicated in the prior final hearing decision dated June 23, 3011. As discussed in detail below, I find the record contains new and additional evidence that provides a basis for a different finding of the claimant's residual functional capacity. However, I find the record does not contain new and additional evidence to support a different finding regarding the claimant's past relevant work; therefore, the prior finding regarding this issue has been adopted in this decision.
>
> After careful consideration of all the evidence, I conclude the claimant has not been under a disability within the meaning of the Social Security Act from February 15, 2009, through the date of this decision.
>
> The claimant alleged a disability onset date of February 15, 2009; however, there is no evidence of treatment until November 2015, when he presented with complaints of low back pain that radiated to his right leg.

(R. at 24, 29–30).

**D. ALJ Barnes's Decision**

ALJ Barnes found that Plaintiff meets the insured status requirements through December 31, 2023, and has not engaged in substantial gainful activity since February 15, 2009, his alleged onset date of disability. (R. at 26). He then determined that Plaintiff suffered from the severe impairments of degenerative disc disease, spondylosis with myelopathy, post-laminectomy syndrome, De Quervain's tenosynovitis, obesity, unspecified attention deficit hyperactivity disorder (ADHD), and unspecified stimulant related disorder in sustained remission. (*Id.*). Still, ALJ Barnes found that none of Plaintiff's impairments, either singly or in combination, meet or medically equal a listed impairment. (R. at 26–28).

As to Plaintiff's residual functional capacity ("RFC"), ALJ Barnes stated:

> After careful consideration of the entire record [the ALJ] find[s] that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is able to frequently climb ramps and stairs, stoop, kneel, crouch and crawl but never climb ladders, ropes or scaffolds. He is able to frequently handle with the left upper extremity, but he must avoid exposure to hazardous machinery and unprotected heights. He is able to perform simple, routine and repetitive tasks that are performed in a work environment free of fast-paced production requirements and involving only simple work-related decisions with few, if any workplace changes.

(R. at 28–29).

Upon "careful consideration of the evidence," ALJ Barnes found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (R. at 29). Relying on the vocational expert's testimony, he concluded that Plaintiff is unable to perform his past relevant work as a forklift operator. (R. at 33). He then determined that Plaintiff would be able to perform the requirements of representative occupations in the national economy such as a mold machine tender, tacking machine tender, and collator operator. (R. at 34). ALJ Barnes

5

concluded that Plaintiff has not been disabled within the meaning of the Social Security Act since February 15, 2009. (*Id.*).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Olive v. Comm'r of Soc. Sec.*, No. 3:06-cv-1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)). But importantly, an ALJ's decision may be reversed, even if supported by substantial evidence, if the ALJ does not "'build an accurate and logical bridge between the evidence and his conclusion.'" *Davis v. Comm'r of Soc. Sec.*, No. 2:19-cv-265, 2019 WL 5853389, at *5 (S.D. Ohio Nov. 8, 2019), *report and recommendation adopted*, No. 2:19-cv-265, 2020 WL 1482318 (S.D. Ohio Mar. 27, 2020) (quoting *Waye v. Comm'r of Soc. Sec.*, No. 1:18-cv-201, 2019 WL 364258, at *5 (S.D. Ohio Jan. 30, 2019), *report and recommendation adopted*, No. 1:18-cv-201, 2019 WL 718542 (S.D. Ohio Feb. 20, 2019)).

## III. DISCUSSION

Plaintiff contends that the ALJ's decision lacks substantial evidence and fails to build a logical bridge between the evidence and its result. (Doc. 9 at 9–10). According to Plaintiff, ALJ

6

Barnes's failure to consider the prior decision by ALJ Lyman and Plaintiff's history of disability reflects a significant misapplication of *res judicata* principles. (Doc. 9 at 4–10 (discussing *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) and *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018))). The Commissioner maintains that the ALJ was not required to adopt the prior disability finding from June 2011, because Plaintiff's benefits from the earlier decision were terminated during a three-year incarceration, and his application covered a new period not adjudicated by the June 2011 decision. (Doc. 10 at 4–10). Ultimately, the Court agrees with Plaintiff that this case should be remanded, because ALJ Barnes failed to build a logical bridge between the record and his decision.

In *Drummond v. Commissioner of Social Security*, the Sixth Circuit held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 126 F.3d 837, 842 (6th Cir. 1997). For example, in that case, the claimant's initial claim for SSI was denied when an ALJ found that she was capable of sedentary work. *Id.* at 838. When the claimant later re-filed her disability claim, a second ALJ found that she was capable of medium-level work—unlike the sedentary RFC finding of the first ALJ—and denied the re-filed claim. *Id.* at 839. After explaining that "[r]es judicata applies in an administrative law context following a trial type hearing," the Sixth Circuit held that the second ALJ was bound by the sedentary RFC determination of the first ALJ because there was no new or additional evidence of an improvement in the claimant's condition. *Id.* at 841–42. The Sixth Circuit reasoned that "[j]ust as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner." *Id.* The Social Security Administration subsequently issued an Acquiescence Ruling explaining how the ruling in *Drummond* would be applied to claims in the Sixth Circuit:

7

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding….

AR 98-4(6), *Effect of Prior Findings on Adjudication of a Subsequent Disability Claim Arising Under the Same Title of the Social Security Act – Titles II and XVI of the Social Security Act*, 1998 WL 283902, at *3 (June 1, 1998).

Then, in *Earley v. Commissioner of Social Security,* the Sixth Circuit clarified how *res judicata* applies in social security proceedings. 893 F.3d 929 (6th Cir. 2018); *see also Teasley v. Comm'r of Soc. Sec.*, No. 2:18-cv-1079, 2019 WL 2559514, at *5 (S.D. Ohio June 21, 2019) (stating that *Earley* clarified the Court's decision in *Drummond*). If a claimant files an application covering the same period as an earlier application, *res judicata* applies absent changed circumstances. *Id.* at 933. *Res judicata* does not apply if a claimant files a subsequent application seeking benefits for a different time period. *Id.* In those cases, the claimant is entitled for a "fresh review" of their application. *Id.* Yet the Court noted that "[f]resh review is not blind review." *Id.* at 934. "A later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id.*

But these principles are further complicated when benefits are terminated due to a claimant's incarceration. When an SSI recipient is incarcerated, payment of their SSI is suspended. *See* 20 C.F.R. § 416.1325(a). But if a claimant is not released from prison within twelve months, their eligibility for SSI benefits is terminated at the start of their thirteenth month of incarceration. *See Blair v. Comm'r of Soc. Sec.*, No. 3:18-cv-18, 2019 WL 4737619, at *3 (S.D. Ohio Sept. 27, 2019) (citing 20 C.F.R. § 416.1335, 416.1325(b)). Consequently, a claimant's benefits do not

8

automatically resume upon their release from prison, and they must file a new SSI application. *Id.* (internal citations omitted).

But the case law is not clear on whether a presumption of disability attaches to a pre-incarceration disability decision that resulted from a trial-type hearing before an ALJ. *Id.* at *4. While the Commissioner argues that individuals like Plaintiff are "not entitled to a presumption of continuing disability in the re-application," the cases the Commissioner cites are not persuasive. For example, in *Roark v. Commissioner of Social Security*, the Court held that *res judicata* did not apply where the claimant "testified that his prior application was approved without an administrative hearing," and therefore did "not involve the situation *Drummond* addressed." No. 1:10-cv-739, 2011 WL 6751190, at *10–11 (S.D. Ohio Nov. 29, 2011). The Court in *Roark* also did not address a situation like Plaintiff's case, where ALJ Barnes seemingly found Plaintiff not disabled for a period during which ALJ Lyman previously found him disabled. (*Compare* R. at 34 (finding Plaintiff not disabled since 2009) *with* R. at 102 (finding Plaintiff disabled since 2009)); *cf.* 2011 WL 6751109, at *12 ("Neither plaintiff nor the Commissioner are seeking to relitigate issues which have previous been determined[.]").

The Commissioner's reliance on *Antico v. Astrue* is also misplaced because the Court found the prior disability decision unconvincing since it "reflect[ed] no discussion at all of [the claimant's] adaptive deficits," which were at issue in the new application. No. 1:11-cv-640, 2012 WL 4473157, at *4 (S.D. Ohio Sept. 26, 2012). Indeed, the requirements for the listing under which Plaintiff sought disability status changed after his first application. *Id.* The Court also noted that decisions in the intervening years finding the claimant not disabled were more entitled to *res judicata*. *Id.*

The Commissioner additionally cites *Messer v. Astrue*, which the Court in *Roark* also discussed. No. 09-342-DLB, 2010 WL 4791956 (E.D. Ky. Nov. 18, 2010); *see Roark*, 2011 WL 6751190, at *11. In *Messer*, the claimant received disability from 1994 to 2002, when he was incarcerated. No. 09-342-DLB, 2010 WL 4791956, at *1 (E.D. Kty. Nov. 18, 2010). He then filed another application in 2003 after his parole, which was denied by an ALJ in 2005. *Id.* The claimant then filed another application in 2009, which was again denied by an ALJ. *Id.* at 1–2. The claimant attempted to argue that *res judicata* should apply to the pre-incarceration decision, although another ALJ determined that he was not disabled in 2005. *Id.* at *5. Like in *Antico*, the Court found that *res judicata* applied to this intervening decision in 2005, rather than the previous decision before the claimant was incarcerated. *Id.* Again, this case is not applicable to Plaintiff's, where the most recent decision was by ALJ Lyman in 2011. (R. at 94–102).

Finally, the Commissioner cites various out-of-circuit cases that have been previously discounted by this Court. *See Blair*, 2019 WL 4737619, at *4. These are also unpersuasive here, considering Sixth Circuit has issued guidance on how *res judicata* applies to Social Security cases in this circuit. *See Drummond*, 126 F.3d at 841–43; *Earley*, 893 F.3d at 933–34.

In sum, *res judicata* may apply from 2009—Plaintiff's initial application date—through his incarceration in 2018, because Plaintiff's previous benefits were awarded following a hearing before ALJ Lyman. *Id.* (citing *Earley*, 893 F.3d at 933). The Commissioner is correct, though, that ALJ Barnes was not bound to ALJ Lyman's decision when he determined whether Plaintiff was under a disability after his release from prison. But Plaintiff's argument for a remand does not hinge on the application of *res judicata*. Rather, the ultimate question is whether an ALJ's decision can be affirmed when they ignore a prior ALJ's conclusion that a claimant was disabled. In this case, the Court finds that it cannot.

Even in cases where *res judicata* does not strictly apply to a prior ALJ's decision, the Sixth Circuit has instructed that ALJs should be "mindful of past rulings and the record in prior proceedings." *Earley,* 893 F.3d at 931. Therefore, the Sixth Circuit does "not sanction entirely ignoring the earlier record." *Pursley v. Saul*, 1:19-cv-2459, 2020 WL 3513675, at *10 (N.D. Ohio June 2, 2020). Ultimately, ALJ Lyman's prior decision was a "legitimate, albeit not binding, consideration." *Earley*, 893 F.3d at 933. And as this Court said in *Blair*, "an ALJ risks error by not considering a previous ALJ's disability decision when adjudicating an applicant's disability status during a new, later time period." *Blair,* 2019 WL 4737619, at *4. Thus, the Undersigned cannot say that ALJ Barnes created a logical bridge between the evidence in the record and his conclusions, and remand is warranted.

Contrary to the guidance from the precedent above, ALJ Barnes referenced ALJ Lyman's prior decision only once. ALJ Barnes stated that Plaintiff "previously filed Title II and Title XVI applications on September 16, 2009, and an Administrative Law Judge issued a hearing decision on June 23, 3011 [sic], finding the claimant was disabled from February 15, 2009, through the date of the decision." (R. at 24, citing R. at 94–102). Next, ALJ Barnes said that *res judicata* applied to that previous time period but not to Plaintiff's present application. (R. at 24). But ALJ Barnes then found Plaintiff not disabled from "February 15, 2009" through 2022, contradicting his earlier statement that *res judicata* applies to the period covered by ALJ Lyman's decision. (R. at 34). This statement also ignores that Plaintiff continued receiving Social Security benefits from 2011 until his incarceration in 2018, and that his benefits only terminated due to his imprisonment, not due to a finding that he was no longer disabled. (Doc. 9 at 5 (discussing the termination of Plaintiff's benefits)). Because ALJ Barnes does not discuss ALJ Lyman's prior decision with any

11

depth, this Court cannot tell if that decision "was not credited or simply ignored." *McHugh v. Astrue*, 2011 WL 6130824, at *5 (S.D. Ohio Nov. 15, 2011).

More still, ALJ Barnes did not analyze the previous findings in his decision, even though ALJ Lyman's decision is in the record. (*See* R. at 94–102; R. at 36 (listing exhibits upon which ALJ Barnes relied)). ALJ Barnes stated that there was no treatment evidence available from 2009 until November 2015, but ALJ Lyman's decision discussed Plaintiff's back surgeries and treatments from 2006 through 2009 and cited medical records. (R. at 29; R. at 100). ALJ Lyman's decision also highlighted the importance of testimony he received from an impartial medical expert, while ALJ Barnes did not have the benefit of such testimony at his 2022 hearing. (R. at 23, 98, 101); *see, e.g.*, *Blair*, 2019 WL 4737619, at *5 (finding a previous ALJ's determinations "highly probative" of a claimant's disability status where they relied on a medical expert's opinion and identified the same medical conditions as a later ALJ).

And ALJ Barnes does not explain why he found Plaintiff not disabled when he found Plaintiff has more severe limitations than previously determined by ALJ Lyman. In his decision, ALJ Lyman concluded Plaintiff had severe impairments of status post back surgery, degenerative disc disease of the lumbar spine with radiculopathy, and obesity. (R. at 100). But ALJ Barnes determined that Plaintiff had the following severe impairments: "degenerative disc disease, spondylosis with myelopathy, post-laminectomy syndrome, De Quervain's tenosynovitis, obesity, unspecified attention deficit hyperactivity disorder (ADHD) and unspecified stimulant related disorder in sustained remission." (R. at 26). While it is possible that Plaintiff both gained new severe impairments and improved his other medical conditions enough to return to non-disabled status, ALJ Barnes's decision is devoid of any comparison to ALJ Lyman's decision that would allow the Court to trace his reasoning.

12

Accordingly, even though the ALJ may ultimately reach the same conclusion, remand is necessary, because this Court cannot determine whether ALJ Barnes's conclusions are supported by substantial evidence.  *Natalie C. v. Comm'r of Soc. Sec.*, 1:21-cv-145, 2022 WL 2651667, at *5 (S.D. Ohio July 8, 2022).

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED** that Plaintiff's Statement of Errors (Doc. 9) be **GRANTED**.  The Court **REVERSES** the Commissioner's non-disability finding and **REMANDS** this case to the Commissioner and Administrative Law Judge under Sentence Four of § 405(g).

IT IS SO ORDERED.

Date:  February 8, 2024  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE